**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Sayegh,<br><br>    Plaintiff,<br><br>v.<br><br>Automatic Data Processing Incorporated,<br><br>    Defendant. | No. CV-24-00277-PHX-SMB<br><br>**ORDER** |

At issue are several overlapping filings, all relating to whether the Court should maintain certain documents under seal. The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    Background**

At the time of this case's commencement, Plaintiff Peter Sayegh was represented by counsel. On November 6, 2024, Plaintiff filed a notice of appearance. (Doc. 24.) Thus, Plaintiff, who is a licensed attorney, became co-counsel on his own case. On February 19, 2025, Plaintiff's outside counsel filed a motion to withdraw without client consent. (Doc. 38.) Judge Liburdi held a hearing thereon, at which Plaintiff and his outside counsel were present but at which Defendant was neither present nor represented. (*See* Doc. 43.) Immediately following the hearing, Plaintiff lodged a document under seal that contained numerous communications between Plaintiff and his outside counsel. (Doc. 42; *see* Doc. 80 at 3.) Plaintiff lodged this document for the purpose of demonstrating the impropriety of

his outside counsel's nonconsensual withdrawal. Judge Liburdi granted the motion to withdraw, ordered the hearing sealed, and promptly recused himself from this case, as he had been exposed to substantial communications between Plaintiff and his former counsel that risked prejudicing Judge Liburdi's adjudication of the merits of Plaintiff's underlying claims. (*See* Doc. 45.) The case was then reassigned to the undersigned.[1]

Shortly thereafter, the parties found themselves in a discovery dispute. (Doc. 49.) Plaintiff felt that he ought to receive additional time to conduct discovery due to his prior counsel's mid-stream withdrawal, which Plaintiff characterized as an extraordinary circumstance meriting an extension. In support of that position, Plaintiff submitted several redacted communications between himself and his former counsel. (*See* Doc. 49; Doc. 55.) Unlike Plaintiff's submissions in connection with the withdrawal motion, which were lodged *ex parte* and under seal, these submissions were made openly to the Court and to Defendant, which was necessary given Defendant's opposition to any extension of the discovery timelines. After a hearing, the undersigned granted Plaintiff's request for an extension. (*See* Doc. 59.) In preparing for the hearing, the undersigned thoroughly reviewed this case's record. Unfortunately, that involved reading the same sealed lodging that likely motivated, at least in part, Judge Liburdi's recusal. Accordingly, the undersigned recused, and this case was transferred to Judge Brnovich with the suggestion that she could avoid the risk of perpetuating the recusal cycle by not exposing herself to the same lodged materials.

---

[1] Plaintiff argues that "[t]here is no evidence to suggest Judge Liburdi ever reviewed the Sealed documents, particularly in light of the fact that he never ruled on the motion to seal them," and that, "[t]herefore, there is no reason to believe Judge Liburdi recused himself on that basis." (Response at 3.) First, the reason that Judge Liburdi never ruled upon the motion to seal is because the motion was inoperative. Plaintiff did not file a separate motion to seal, but instead included the motion to seal within the lodging itself. This was improper. A lodged document is the object of a properly filed motion; it does not supplant the motion. *See* LRCiv 5.6(b). Thus, Plaintiff's motion, which was only lodged and was never filed, was ineffectual. Second, Judge Liburdi expressly stated in his order permitting withdrawal that he "conducted an in-camera review of documents" and that he granted withdrawal "[b]ased on information learned during this hearing and the in-camera review." (Doc. 45 at 1.) And in any event, the Court would assume that Judge Liburdi had read the lodged materials, as it is fair to presume that federal judges apprise themselves of all documents placed on their dockets.

1 Less than one month later, Plaintiff filed a motion with Judge Brnovich seeking an unsealing of the transcript of the hearing before Judge Liburdi so that he may use said transcript to formulate a bar complaint and a malpractice lawsuit against his former counsel. (*See* Doc. 63.) Defendant consents to that motion but opposes its one-sided nature. (*See* Doc. 69.) Defendant believes that it, too, is entitled to view and utilize the sealed hearing transcript. Defendant thus filed its own motion to unseal (Doc. 68, Motion), and this motion includes within its ambit not only the hearing transcript but also the sealed materials that Plaintiff lodged in the immediate aftermath of the hearing before Judge Liburdi. Defendant contends that Plaintiff has both expressly and implicitly waived the attorney-client privilege that otherwise would have attached to his communications with his former counsel, and Defendant further contends that this waiver extends to the hearing transcript and the lodged materials. Defendant asserts that Plaintiff effected this waiver by attempting to utilize and actually utilizing his prior counsel's alleged incompetence and various communications related thereto as a basis for extending discovery, altering the terms of discovery, and extending the deadline to amend his pleading. (*See* Motion at 8.)

Plaintiff filed an inappropriately aggressive Response (Doc. 80, Response).[2] Within the first two pages thereof, he refers to Defendant's motion as "frivolous," "brazen," "an abuse of process," and "in blatant defiance" of the undersigned's prior rulings. This bluster, as well as the meritless request for sanctions that accompanies it, will be disregarded. Defendant filed a Reply (Doc. 84, Reply). Judge Brnovich referred these matters to the undersigned, as they pertain to the sealed materials that led to the prior recusals of both Judge Liburdi and the undersigned. (*See* Doc. 105.)

. . .

. . .

---

[2] Plaintiff's Response both opposes Defendant's motion to seal and seeks a protective order covering the same documents. Plaintiff does not explain why a protective order is appropriate. Therefore, the request for a protective order seems to merely be an alternative means of advocating for preservation of the seal. The Court declines to enter a protective order on such a nonexistent showing of propriety.

- 3 -

## II. Legal Standard

Defendant contends that the Court must grant its motion to unseal unless there is a "compelling reason" that overcomes the strong presumption of judicial openness. (Motion at 9.) Although the compelling-reasons standard governs motions to unseal dispositive filings, the less demanding good-cause standard governs motions to unseal non-dispositive filings. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). In *Center for Auto Safety*, the Ninth Circuit clarified the framework district courts must use to determine whether a filing is dispositive or non-dispositive. The core thrust of the inquiry is whether the filing at issue "is more than tangentially related to the underlying cause of action." *Id.* at 1099. The circuit court explained that motions for preliminary injunctions and many motions in limine are dispositive for purposes of the confidentiality inquiry, despite not being literally dispositive of the underlying cause of action, because such motions are intimately entangled with the merits and/or ultimate resolution of the action. *Id.* at 1099–1102. However, the Ninth Circuit did not disturb the general proposition that "discovery-related motions are often unrelated to the merits of a case." *Id.* at 1098. Indeed, the appellate court specifically endorsed its prior opinion in which it held that a sanctions motion relating to incomplete discovery was non-dispositive. *Id.* at 1097–98 (citing *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002)).

Here, there is no contention that the filings at issue, which relate exclusively to requests for discovery and amendatory extensions, are in any manner dispositive. Therefore, the good-cause standard applies. This conclusion is somewhat academic, however, as both parties recognize that the continuing validity of the Court-imposed seal depends upon the extent to which Plaintiff waived the attorney-client privilege that was the basis for the seal in the first place.

The attorney-client privilege protects communications between attorneys and clients that relate to the provision of legal advice. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege shields communications and is therefore distinct from the work-product doctrine, which shields documents and other items prepared in

- 4 -

anticipation of litigation. *See id.* at 1119. Plaintiff invokes the work-product doctrine, (*see* Response at 5), but, as explained below, the work-product doctrine is not meaningfully implicated here.

A party may waive the attorney-client privilege in more than one way. First, under the somewhat inaptly named principle of "express waiver," a party destroys the privilege that would otherwise attach to an attorney-client communication if he discloses that communication to a third party who is not bound by the privilege. *Sanmina*, 968 F.3d at 1116–17. Express waiver does not depend upon an intent to waive; it occurs by virtue of the disclosure alone, irrespective of the subjective desire of the waiving party. *Bittaker v. Woodford*, 331 F.3d 715, 721 n.4 (9th Cir. 2003). Express waiver occurs even when the third party receiving the disclosure is the government. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127–28 (9th Cir. 2012). A party expressly waives the privilege by disclosing attorney-client communications to an adverse party in litigation, *see Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.* (hereinafter "*Leland*"), 237 F.R.D. 618, 626 (N.D. Cal. 2006), but a party does not waive the privilege by submitting communications to a judge for *in camera* review, *see United States v. Chen*, 99 F.3d 1495, 1502–03 (9th Cir. 1996). The second method of waiver is "implied waiver," which occurs when a party puts at issue the performance of his attorney. *Sanmina*, 968 F.3d at 1117. This form of waiver is based on the fairness principle and "is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Bittaker*, 331 F.3d at 719. "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Id.*

"Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure—they merely recognize the waiver after it has occurred." *Id.* In contrast, a court is said to "impose" an implied waiver.

> The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim.

*Id.* (internal citation omitted).

After it is determined that a party has waived the attorney-client privilege, the inquiry shifts to the waiver's scope. "The scope of a waiver of attorney-client privilege extends [] to all communications on the same subject matter." *Leland*, 237 F.R.D. at 625. However, particularly in the context of implied waiver, in which the court is said to impose such waiver in furtherance of the fairness principle, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720. Moreover, a party may proactively walk back an implied waiver by "choosing to abandon the claim that gives rise to the waiver condition." *Id.* at 721.

**III.    Discussion**

    **A.    Express Waiver**

There is simply no question that Plaintiff, by disclosing attorney-client communications to his litigation adversary, expressly waived to one extent or another the attorney-client privilege. Disclosure of privileged documents to one's litigation opponent is the quintessence of express waiver. To be clear, the only documents that Defendant contends effectuated an express waiver, and the only documents that the Court holds effectuated an express waiver, are the attorney-client communications submitted in support of the discovery dispute presented to the undersigned. (*See* Doc. 49; Doc. 55.) No other filing is relevant to the express-waiver inquiry. Much of Plaintiff's briefing on express waiver is therefore inapt, as it addresses purported disclosures far removed from the disclosures that Defendant contends constituted an express waiver.

- 6 -

Plaintiff argues that he did not expressly waive the privilege because he redacted portions of the disclosed attorney-client communications, thereby evincing an intent not to waive the privilege. (Response at 8.) This contention fails, as Plaintiff's intent is irrelevant. The redactions, although they affect *what* was disclosed and thereby affect the scope of the resulting waiver, do not alter the fact that a waiver occurred. Substantial portions of the communications that Plaintiff disclosed were unredacted, and these disclosures therefore constitute a waiver of the attorney-client privilege. The question of how far the waiver extends is separate from and subsequent to the question of whether a waiver occurred in the first place. As Plaintiff disclosed attorney-client communications to his litigation opponent, there is no colorable argument that an express waiver did not occur thereby. Most of Plaintiff's assertions go to the extent of express waiver, not the fact thereof. The Court turns to that issue now.[3]

The parties agree that Plaintiff's express waiver extends to any and all communications that address the same subject matter and ought in fairness to be considered together. The question, then, is whether the documents that Plaintiff lodged under seal and the sealed hearing transcript address the same subject matter as the documents that Plaintiff later openly disclosed to Defendant and, if so, whether they ought in fairness to be considered together. The communications that Plaintiff disclosed concern various discussions between him and his former counsel on the subject of how best to proceed in discovery against Defendant. In Plaintiff's own words, he disclosed those communications both to show his own personal "diligence" in pursuing discovery and to show that the need for an extension was created by his former counsel's "fail[ure] to timely file this dispute despite explicit instructions" to do so. (Doc. 49 at 2.) Thus, the Court agrees with

---

[3] The remainder of Plaintiff's arguments against the fact of express waiver are a series of assertions that he did not waive the attorney-client privilege by disclosing attorney-client communications because such communications addressed content that Defendant was already aware of, namely the state of various discovery disputes between himself and Defendant. (Response at 9–10.) This argument fails. A party waives the privilege by disclosing to his opponent communications in which he and his lawyer discuss the litigation conduct of his opponent and the appropriate response thereto. Indeed, the fact that the attorney-client communications discuss the litigation opponent would seem to accentuate the fact that a waiver occurred, not diminish it.

- 7 -

Defendant's characterization of the disclosed materials as "reflect[ing] discussions between Plaintiff and his former counsel regarding discovery strategy." (Motion at 11.) That is not the same subject matter as the lodged materials or the sealed hearing transcript. Those documents primarily concern whether it was proper for Plaintiff's former counsel to withdraw without his consent. Although disagreements over discovery strategy may have been related to the withdrawal dispute in an ancillary manner, the primary issue animating the withdrawal dispute was a fundamental disagreement over the value of Plaintiff's case. In short, Plaintiff felt that his case was worth a great deal of money, whereas his former counsel felt that it was not worth a whole lot. As a result, Plaintiff and former counsel were at loggerheads over whether to settle. The Court does not view the dispute between Plaintiff and his former counsel over the value of this case as part and parcel with the dispute between Plaintiff and Defendant over the propriety of discovery extensions. Nor does fairness require Defendant to be apprised of the former in order to adequately advance its position in the latter.[4]

That is not so say, however, that *some* of the communications in the lodged materials do not materially concern discovery strategy and disagreements relating thereto. The Court agrees that these communications are no longer privileged, as they do indeed relate to the same subject matter as the disclosed materials, and they ought in fairness to be considered together. However, such communications comprise only a fraction of the lodged materials. Moreover, such communications are embedded within the lodged materials and cannot easily be disaggregated therefrom. Thus, the Court concludes that an order unsealing the lodged materials in a blanket fashion is inappropriate. Instead, the Court holds that Defendant may in the future seek access to any communication related to the discovery dispute addressed by the attorney-client communications that Plaintiff has already

---

[4] Defendant notes, correctly, that Plaintiff invoked his former counsel's alleged "misconduct" in the notice of discovery dispute. (*See* Motion at 11–12; Doc. 49 at 2.) The Court attributes that reference to Plaintiff's penchant for aggressive rhetoric. Thus, Plaintiff's verbal flourishes notwithstanding, the Court construes the discovery dispute as just that, a discovery dispute and not an attempt to relitigate the legal propriety of Plaintiff's former counsel's withdrawal, which Judge Liburdi had already decided anyways.

- 8 -

disclosed. Whether such sought-after communications were submitted in the lodged materials shall be irrelevant to whether they are discoverable as a result of express waiver.

The same conclusion applies to the sealed hearing transcript. The hearing mainly addressed the divergent views held by Plaintiff and former counsel regarding the overall value of the case and whether such divergence constituted adequate cause for withdrawal. That discussion does not encompass the same subject matter as the disclosed communications, nor does fairness require that the disclosed communications be considered alongside the hearing transcript.

In sum, Plaintiff expressly waived the attorney-client privilege regarding his communications with his former counsel relating to discovery strategy, but the scope of such waiver does not extend in a blanket fashion to the lodged materials or to the sealed hearing transcript, both of which primarily addressed the subject of whether a pronounced disagreement over the value of Plaintiff's case was enough to permit the nonconsensual withdrawal of former counsel.[5]

### B.    Implied Waiver

Defendant contends that several different bases of implied waiver exist in this case. Specifically, Defendant asserts that Plaintiff impliedly waived the attorney-client privilege when he (1) lodged the lodged documents under seal in opposition to the withdrawal motion, (2) sought a discovery extension from the undersigned, (3) filed a motion to amend with Judge Brnovich, which she has since denied, (*see* Doc. 66; Doc. 107), and (4) informally indicated to Defendant the he might in the future use his former counsel's alleged incompetence as the basis for a motion seeking modification of the operative protective order in this matter. (Motion at 10, 12–13.) The Court disagrees.

---

[5] There is no need to consider the work-product doctrine, as neither the disclosed materials nor the lodged materials are work product. The lodged materials comprise an appellate opinion that Plaintiff should have simply cited rather than filed as an attachment, a lengthy transcript of a phone conversation with former counsel, an email chain with former counsel, an affidavit summarizing the phone conversation, an email chain with a potential replacement attorney, a spreadsheet summarizing Plaintiff's attempts to procure new counsel, and a spreadsheet detailing the time that Plaintiff spent preparing for the withdrawal hearing. Although the affidavit and two spreadsheets might constitute work-product, they do not relate to the same subject matter as the disclosed materials, so the Court does not consider them further.

Regarding the first point, the Court concludes that Plaintiff did not implicitly waive any privilege with respect to Defendant by submitting documents under seal in relation to the motion to withdraw, which did not affect Defendant and regarding which Defendant took no position. The doctrine of implied waiver exists to vindicate a party's ability to fairly defend itself against claims and motions. As Defendant had no legal position to defend regarding the motion to withdraw, Defendant cannot be the beneficiary of an implicit waiver in relation thereto. The Court will not impose an implicit waiver in furtherance of a fairness interest that does not actually exist. *See Bittaker*, 331 F.3d at 720.

Regarding the second and third points, the Court concludes that Plaintiff did not implicitly waive the privilege regarding the lodged materials or the sealed hearing transcript. Although the motions for a discovery extension and an amendatory extension are the kind of motions that can implicitly waive the privilege, neither motion did so here. Plaintiff did not place the lodged materials or the hearing transcript at issue in his discovery motion to the undersigned, nor did the undersigned consider those materials in ruling thereon. However, the Court does not fault Defendant for thinking otherwise, as the undersigned was less than precise in his statements on the record. The undersigned described the lodged materials as "germane" to the discovery dispute, (Doc. 61 at 7–8), but that was not accurate. What the undersigned should have said is that the fact of withdrawal was germane, as were the communications submitted in the disclosed materials, *not* the lodged materials. The disagreement between Plaintiff and his former counsel regarding their settlement posture was not germane and indeed played no role in the undersigned's ruling. The undersigned exposed himself to the lodged materials inadvertently, as a result of the routine record review that the undersigned conducts as a prelude to ruling upon motions generally. Therefore, as the lodged materials and sealed hearing transcript were not at issue before the undersigned, Defendant did not in fairness require access thereto in order to defend against the discovery request. The same is true of the amendment motion

before Judge Brnovich, which was argued and ultimately denied without any reference to the lodged materials or the sealed hearing transcript. (*See* Doc. 107.)[6]

Moreover, even if either motion could have been a proper vehicle for an implied-waiver argument, the Court is skeptical that such an argument can be presented *post hoc*. Even if a motion does implicate the fairness principle such that a court could impose an implicit waiver, the rationale supporting such an imposition would seem to evaporate once the motion is resolved on independent grounds. In other words, the doctrine of implied waiver requires an active dispute as a predicate, not a past dispute. A contrary conclusion would grate against the Ninth Circuit's recognition that "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *See Bittaker*, 331 F.3d at 721. Thus, for two separate reasons, the Court concludes that Defendant's second and third arguments for implied waiver are unavailing.

The fourth point fails for the opposite reason. If, as he has indicated that he might, Plaintiff eventually moves to amend the protective order on the basis of his former counsel's alleged incompetence, then such motion will implicitly waive the attorney-client privilege relating to that alleged incompetence. However, Plaintiff has not yet asserted such a motion. Accordingly, he has not yet implicitly waived the privilege. Given that "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it," the Court cannot impose any waiver until there is a proceeding before it. *See Bittaker*, 331 F.3d at 720.

Thus, the Court concludes that Plaintiff has not impliedly waived the attorney-client privilege. That conclusion is not prospectively binding, as Plaintiff could impliedly waive the privilege tomorrow if he so chooses.

**IV.    Conclusion**

Although Plaintiff has not yet impliedly waived the attorney-client privilege, Plaintiff did expressly waive the privilege regarding communications addressing discovery

---

[6] To be fair, this denial occurred after Defendant filed its Reply, so Defendant's argument made more sense at the time Defendant presented it.

- 11 -

strategy. However, the scope of that waiver does not extend in blanket fashion to the lodged materials or the sealed hearing transcript. The Court will therefore deny Defendant's motion to unseal, but the Court hereby directs Plaintiff to prepare redacted versions of the lodged materials and all other similar materials upon Defendant's reasonable request.[7] Such redactions shall permit Defendant to apprise itself of the discovery strategy relevant to the prior discovery dispute, but the redactions shall prevent Defendant from unduly learning the details of the disagreement between Plaintiff and former counsel regarding the value of this case. Defendant has evinced a willingness to treat such disclosures as confidential. (Motion at 3 n.3.) The Court leaves the terms of any such understanding to the parties. In light of the foregoing instruction to Plaintiff to prepare redacted versions of any communication whose privilege he expressly waived as determined herein, the Court perceives good cause to maintain the seal currently protecting the lodged materials and the hearing transcript. The Court entered that seal to prevent Defendant from learning of Plaintiff's former counsel's valuation of this case. That motivation still exists, so the Court will preserve the seal. Should Plaintiff refuse to comply with the Court's instruction above, the Court may reconsider its ruling.[8]

In the event that a subsequent dispute arises in connection with the issues addressed herein, including a dispute regarding Defendant's entitlement to the lodged materials or a dispute regarding the propriety of Plaintiff's redactions thereof, the dispute shall be decided by the undersigned. To present such a dispute, the parties shall file a joint statement as described in the operative scheduling order (Doc. 18). The parties must also insert the following phrase into the caption of any such filing: "For Direct Referral to Judge Tuchi." In the opening paragraph of any such filing, the parties shall cite to this Order.

. . .

---

[7] Any such request shall of course be subject to the ordinary requirements governing requests for disclosure, such as relevance and the like.

[8] The Court has resolved this dispute according to the paradigm of privilege, as that is how the parties presented it. However, it seems that, had the parties simply conferred with one another in good faith, this dispute could have been averted on grounds of relevance alone, without any need for motion practice. The Court is left to wonder what prevented that outcome.

Notwithstanding the Court's decision to preserve the seal as a general matter, the Court must determine whether to lift the seal on the hearing transcript in a limited fashion as Plaintiff requests in *his* motion to unseal. (*See* Doc. 63.) As the Court sealed the hearing transcript for the sole purpose of protecting Plaintiff, the Court perceives no reason to refrain from lifting the seal upon Plaintiff's express request. The Court offers no advisory opinion regarding whether or to what extent Plaintiff's intended usage of the hearing transcript is proper, whether such usage might independently constitute a waiver of the privilege, or whether such usage would permit Defendant to access the transcript.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion to Unseal (Doc. 63). The Clerk of Court is directed to unseal the transcript of the February 26 hearing before Judge Liburdi (Doc. 43) only insofar as is necessary to release it directly to Plaintiff. Such release shall be in person. The Clerk of Court shall thereafter reseal the document.

**IT IS FURTHER ORDERED** denying Defendant's Motion to Unseal (Doc. 68). However, Plaintiff is directed to prepare redacted copies of all communications relating to the discovery strategy embodied in the communications that he has already disclosed, as described in more detail hereinabove. In the event that a subsequent dispute arises as to these matters, the parties shall present said dispute directly to the undersigned using the procedure described in more detail hereinabove.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Protective Order (Doc. 80).

Dated this 12th day of August, 2025.

Honorable John J. Tuchi
United States District Judge